```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA

BOARD OF REGENTS OF THE        )
UNIVERSITY OF NEBRASKA,        )
                               )
      Plaintiff,               )          4:04CV3356
                               )
      v.                       )
                               )
BASF CORPORATION,              )          MEMORANDUM AND ORDER
                               )
      Defendant,               )
                               )
      and                      )
                               )
MONSANTO COMPANY,              )
                               )
      Intervening Plaintiff,   )
```

Pending before me is the motion to intervene as a defendant filed by Syngenta Crop Protection, Inc. ("Syngenta"). Filing 99. Neither Plaintiff Board of Regents of the University of Nebraska (the "University"), nor Intervening Plaintiff Monsanto Company ("Monsanto") object to Syngenta's motion to intervene. Defendant BASF does object to the motion. For the reasons set forth herein, I conclude Syngenta's motion to intervene as a defendant should be granted.

This lawsuit centers around the University's development of technology for producing crops resistant to a herbicide known as dicamba. The basis for the controversy dates back to February 1993, when Sandoz Agro, Inc. ("Sandoz") agreed to provide startup funds for the University's research into dicamba-resistant crop technology in exchange for the right to market and use the information and inventions gleaned from that research. Under the February 1993 contract, (hereinafter referred to as the "Sandoz Agreement"), Sandoz provided the University with $100,000 in exchange for an unrestricted, non-exclusive license to sell any

"invention including know-how and resulting patents in the field of crops resistant to dicamba and all genetic material related to deriving dicamba resistance. . . . Filing 1 (Complaint), ¶ 8; filing 76 (Amended Complaint in Intervention), ¶¶ 6-8.

Sandoz was merged with and into Syngenta on December 31, 2005. Filing 99, ex. A (Syngenta's proposed Intervention Answer/Counterclaim), ¶ 8. Therefore, in this action, Syngenta claims it owns any rights Sandoz acquired and held under the Sandoz Agreement at the time of merger.

Sandoz and BASF entered into an asset purchase agreement in December 1996, and under that agreement, Sandoz transferred its agricultural dicamba business in the United States and Canada to BASF, including its non-exclusive licence to market dicamba resistance technology obtained under the Sandoz Agreement. Filing 1 (Complaint), ¶ 9, filing 30 (BASF Answer to University Complaint), ¶¶ 9, 30; filing 76 (Monsanto Amended Complaint in Intervention), ¶ 11; filing 79 (BASF Answer to Monsanto Complaint), ¶ 10.

In its suit for declaratory relief against BASF, the University claims BASF obtained nothing from Sandoz in 1996 because the University did not consent to Sandoz' alleged sale of its Sandoz Agreement rights to BASF. The University alleges that "[p]ursuant to federal law governing the assignment and transfer of patent licenses, Sandoz had no right to assign or otherwise transfer the Licence to BASF without the University's consent." Filing 1 (Complaint), ¶ 15. The University therefore "respectfully requests a declaration from the Court that BASF has no right, title, or interest in the License." Filing 1 (Complaint), p. 4.

BASF's answer to the University's complaint requests an order declaring that the transfer to BASF of Sandoz's rights under the Sandoz Agreement be declared valid and that the University be enjoined form taking any action contrary to BASF's ownership and license rights obtained from Sandoz.  Filing 30 (Answer), p.10.

Monsanto has intervened as a plaintiff in the University's action against BASF.  Filing 76 (Amended Complaint in Intervention).  Monsanto alleges it entered into a license agreement with the University on January 12, 2005, and when it did so, it was not aware that BASF was making any claim of ownership to any patent or any patent application made by the University for dicamba-resistant crop technology.  Filing 76 (Amended Complaint in Intervention), ¶ 13.  Monsanto claims that under its license agreement with the University, it acquired the exclusive world-wide right to produce and sell products incorporating dicamba-resistant crop technology invented and/or patented by the University.  Filing 76 (Amended Complaint in Intervention), ¶¶ 14-16.  Monsanto seeks an order declaring that it has the exclusive license to market the University's dicamba-resistant crop technology, and that Sandoz (now Syngenta) has no right to do so.  In the alternative, should the court find that BASF obtained a nonexclusive license by obtaining all or part of Sandoz' rights under the Sandoz Agreement, Monsanto requests an order declaring that it also holds a non-exclusive license to the patent and the patent applications for the University's dicamba-resistant crop technology.  Filing 76 (Amended Complaint in Intervention), pp. 8-9.

Syngenta's proposed answer in intervention and counterclaim responds to Monsanto's complaint and moves for an order declaring

3

that Sandoz validly assigned to BASF its rights under the Sandoz Agreement as to the United States and Canada, but that Sandoz retained and Syngenta now owns all rights obtained under that agreement with respect to marketing University-developed dicamba-resistant crop technology to all other parts of the world. Filing 99, ex. A (Syngenta's proposed Intervention Answer/Counterclaim), p. 14.  Syngenta further argues that even if the University proves any transfer of rights from Sandoz to BASF was invalid, that does not mean rights created by the Sandoz Agreement were extinguished.  Rather, Syngenta argues that if the transfer to BASF is deemed invalid and unenforceable, then Sandoz transferred nothing to BASF in 1996, Sandoz still owned its rights under the Sandoz Agreement at the time of its merger with Syngenta, and Syngenta now owns the all the non-exclusive license rights created by the Sandoz Agreement.

     Accordingly, the underlying question in this lawsuit is whether and to what extent the Sandoz Agreement currently serves to grant anyone a licence to market or use University-developed dicamba-resistant crop technology, inventions, know-how, and patents.  The University and Monsanto claim Monsanto has the exclusive right to use or sell such technology under its agreement with the University, and BASF has no such rights.  BASF claims Monsanto cannot hold an exclusive license because it owns a non-exclusive license for the United States and Canada. Syngenta agrees with BASF, but it further claims that depending on the outcome of the University's lawsuit against BASF, at the least it holds a non-exclusive license to sell the University's dicamba-resistant crop technology anywhere in the world except the United States and Canada, and at most, it still owns the worldwide non-exclusive license as originally granted under the 1993 Sandoz Agreement.

Rule 24 of the Federal Rules of Civil Procedure allows a party to intervene as of right when:  1) the applicant claims an interest relating to the property or transaction which is the subject of the action," 2) "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest," and 3) the applicant's interest is not "adequately represented by existing parties."  Fed. R. Civ. P. 24(a).

The first two requirements of Rule 24(a) are clearly met in this case.  The property at issue is the right to sell the University's dicamba-resistant crop technology, and Syngenta claims it owns a non-exclusive license to sell such technology in and to any part of the world other than the United States and Canada.  Syngenta's interest in this license will be impaired if the University succeeds in claiming Sandoz' 1996 transfer to BASF was invalid and any rights granted under the Sandoz Agreement no longer exist, and if Monsanto succeeds in proving it owns an exclusive license to market the University's technology.

BASF claims its interests are aligned with Syngenta's such that it can adequately represent Syngenta throughout this litigation.  However, Syngenta claims to have interests that are separate from BASF's--the right to market the University's dicamba-resistant crop technology in parts of the world other than the United States and Canada.  While Syngenta and BASF are allied in claiming they possess non-exclusive licenses under the Sandoz Agreement, Syngenta is not thereby foreclosed from choosing and directing its own legal representation to protect its separate interest in this litigation.

5

Assuming Syngenta continues to claim the license transfer to BASF was valid, Syngenta and BASF will continue to have similar interests throughout the litigation with the University and Monsanto unless the University prevails on its claim against BASF. If that occurs, the interests of Syngenta and BASF will diverge. Should the University obtain a judgment against BASF rendering the asset purchase agreement invalid with respect to the transfer of Sandoz' "agricultural dicamba business" in the United States and Canada, Syngenta's interest in this litigation will actually increase. Syngenta claims that if the asset purchase agreement is adjudged invalid in the University's action against BASF, the 1996 transfer of Sandoz' property to BASF must be rescinded and all parties returned to their pre-contract position, and Syngenta will then own the rights granted under the Sandoz Agreement worldwide, including for the United States and Canada.

In other words, even absent any alleged geographical limitations in the license transferred to BASF, Syngenta and BASF do not have identical interests, and they do not face the same potential outcomes in this litigation. If Syngenta's argument is correct, Syngenta stands to win if BASF loses. Under such circumstances, BASF and Syngenta's interests would conflict. BASF cannot adequately represent Syngenta's interests throughout this litigation.

BASF argues Syngenta's claim cannot be adjudicated in this forum, and Syngenta has no standing to intervene. BASF argues:

> The only issue on which BASF's and Syngenta's interests appear to diverge is over whether non-U.S. and non-Canadian rights in the intellectual property at issue were transferred to BASF or, conversely, retained by Sandoz Agro under the Asset Purchase Agreement and

6

>Sandoz Agro Bill of Sale.  But that issue is not and cannot properly be before this Court.  Any disagreement between BASF and Syngenta on their respective rights and interests under the Asset Purchase Agreement and Sandoz Agro Bill of Sale is subject to the express forum selection clauses in those agreements, which require that the issue be adjudicated elsewhere and prevent this Court from asserting jurisdiction over that disputed issue.
>
>Moreover, to the extent Syngenta asserts in its second counterclaim that the Board should have assigned intellectual property to Sandoz Agro or that the Board breached the Sandoz Agro-Board Agreement, Syngenta has no right to assert such claims in this litigation because Sandoz Agro previously assigned those claims to BASF.

Filing 111 (BASF Brief), pp. 1-2.

BASF's arguments fail.  As described by BASF, assuming Sandoz assigned to BASF the right to pursue litigation, that assignment was limited to claims "pertaining to its 'agricultural dicamba business in the United States and Canada.'"  Filing 111 (BASF Brief), p.2.  Contrary to BASF's argument, I cannot interpret this geographically limited assignment to mean Syngenta assigned all claims, including its claimed non-exclusive license to sell dicamba-resistant crop technology in other parts of the world, to BASF.  Filing 111 (BASF Brief), p.2, 8-9 (emphasis added).

I am also not convinced the "forum selection clause" of the Sandoz asset purchase agreement renders this court an improper forum for litigating Syngenta's claim.  Only parties to the contract are bound by the contract's forum selection clause.  Therefore, such clauses are drafted by the contracting parties to determine the venue of any litigation between them.  The bill of sale for the 1996 asset purchase agreement between Sandoz and

7

BASF provides that "all actions and proceedings arising out of or relating to this Bill of Sale and Assignment shall be heard and determined in any New York state or federal court sitting in The City of New York."  Filing 112, ex. B (Bill of Sale and Assignment), ¶ 8.  However, the validity of the Sandoz license transfer to BASF is already pending in this forum as an action between BASF and third parties, the University and Monsanto.  Syngenta has therefore moved to intervene to protect interests it allegedly holds which are already at issue in this litigation.  Moreover, its proposed claim in intervention raises no action against BASF related to asset purchase agreement or its terms.

Even assuming the BASF/Sandoz forum selection clause was intended to reach litigation initiated by third parties where no claim exists between these contract parties, such clauses are not binding on the federal court's venue determination.  Although the parties' forum selection clause represents their agreement as to the most proper forum to resolve their disputes, the clause "should receive neither dispositive consideration . . . nor no consideration"  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988).  Rather, the court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice.  Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997).

Litigation over who can sell the University's dicamba-resistant crop technology is already pending in this forum, and based on the claims raised, it is unlikely Syngenta's claim in intervention will require significant additional witnesses and/or evidence.  BASF is already a party to litigation in this forum, and Syngenta is willing to be.  Under such circumstances, enforcing the forum selection clause between these parties serves

8

no real purpose.  The clause cannot justly be used by BASF as a means of foreclosing Syngenta from representation in this forum while BASF, who also agreed to the forum selection clause, defends its interests under the asset purchase agreement.  The court cannot permit the parties' contractual forum selection provisions to undermine the court's goal of securing a just, orderly, efficient, and expeditious resolution of litigation.

Syngenta has proved the requirements for intervention under Rule 24(a).  I find no merit to BASF's claim that it can adequately represent Syngenta, that Syngenta assigned this litigation to BASF and therefore lacks standing to intervene, or that Syngenta must pursue its claim in a New York forum pursuant to a forum selection clause in the 1996 Bill of Sale.

IT THEREFORE HEREBY IS ORDERED:

1. The motion to intervene as a defendant filed by Syngenta Crop Protection, Inc., filing 99, is granted.

2. On or before September 12, 2006, Syngenta shall file its "Answer in Intervention of Syngenta Crop Protection, Inc. to Monsanto Company's Amended Complaint in Intervention; and Counterclaim," a copy of which is attached to its motion to intervene.

DATED this 6th day of September, 2006.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge

9