```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA

BOARD OF REGENTS OF THE         )
UNIVERSITY OF NEBRASKA,         )
                                )
            Plaintiff,          )         4:04CV3356
                                )
       v.                       )
                                )
BASF CORPORATION,               )         MEMORANDUM AND ORDER
                                )
            Defendant,          )
                                )
MONSANTO COMPANY,               )
                                )
    Intervening Plaintiff,      )
                                )
     and                        )
                                )
SYNGENTA CROP PROTECTION,       )
INC.,                           )
                                )
    Intervening Defendant.      )
                                )
```

BASF has filed a motion seeking to compel the plaintiff (hereinafter "plaintiff" or "Board")to produce documents, for sanctions, and for other relief, stemming from the court's earlier order granting BASF's motion to compel in part and ordering the production of so-called "development" documents "for the time period commencing when its contract with Sandoz was signed and ending on the date the contract, as extended, expired."  Memorandum and Order of January 26, 2006, Filing 56. The present motion and supporting documentation declare that as a result of the aforementioned order the plaintiff produced 1,737 pages of documents by the order's deadline, February 15, 2006. It then states that since August 1, 2007---in the final days of the discovery period allowed by the court's progression orders—-plaintiff has produced "more than 11,000 pages of new documents, many of which fall squarely within the ambit of the Court's order

and should have been turned over to BASF more than eighteen months ago." Filing 290. In addition, the motion accuses plaintiff of spoliation of evidence by "failing to retain key documents" ordered by the court to be produced. Id. The motion seeks six items of relief to "cure the prejudice" occasioned by the plaintiff's actions:

>    (1)  Ordering plaintiff to fully comply with the earlier order by searching the files of its employees for responsive documents and producing them;
>
>    (2)  Ordering plaintiff to certify it has complied and produced all responsive documents;
>
>    (3)  Ordering plaintiff to re-produce Drs. Weeks and Herman for deposition;
>
>    (4)  Precluding plaintiff from arguing that there is no or insufficient evidence of Sandoz Agro's contributions to development of or communication with plaintiff about the disputed inventions;
>
>    (5)  Ordering the Board to pay BASF's reasonable attorneys' fees and expenses caused by plaintiff's failures to comply with the order, including fees and expenses incurred in re-deposing Drs. Weeks and Herman, and for the filing of its earlier motion to compel and this motion;
>
>    (6)  Extending BASF's discovery deadlines, and deadlines for expert witness disclosures and filing motions for summary judgment.

Id. Intervening Defendant Syngenta Crop Protection, Inc. ("Syngenta") has filed its own motion seeking the same relief from the Board. Filing 311. Both motions are supported by evidence and briefs. Filings 291, 292, 312, 313, 319, 320. Summarized, movants' arguments are that the recently produced documents are within the court's earlier order; plaintiff's counsel represented to defendants' counsel that all responsive documents had been produced, when, in fact, they had not; BASF and Syngenta continued to request "development" documents but

2

prepared their defenses based on those earlier produced; one day before the defendants were scheduled to depose a key witness, plaintiff's counsel disclosed for the first time the existence of over 11,000 (later said to be approximately 40,000) additional pages of documents, at least some of which are within the scope of the court's order compelling production; and plaintiff's counsel's failures to institute an adequate search for the documents, and/or instruct their client to do so, has prejudiced the defendants to the point that serious sanctions are appropriate.

Plaintiff and Intervening Plaintiff Monsanto Company ("Monsanto") have opposed the defendants' motions with briefs and evidence. Filings 296, 300, 301, 329. They dispute that all the recently produced documents were within the scope of the court's production order. They do, however, acknowledge that at least some of them are. They further argue that the Board did not deliberately withhold or conceal any documents it was ordered to produce; there is no evidence that any documents have been destroyed; and the defendants are not prejudiced by the production of these documents, but rather, stand to benefit from them; and sanctions, particularly those sought by the motions, are not appropriate.

Initially, I note that the parties disagree on whether the motion is properly before the court, that is, whether movants' counsel have personally conferred with the nonmoving parties' counsel in "sincere attempts . . . to reach an accord" prior to filing the motion. NECivR 7.1(I). Rather than address that issue, however, I have chosen to address the motions on the merits, because of their importance. Allegations that counsel and/or parties have failed to abide by an order of the court are

very serious indeed; to preserve the integrity of the judicial process, the court is warranted in examining the allegations, regardless of whether counsel have conferred beforehand.

The motion draws into question the actions of plaintiff and plaintiff's counsel in responding to the court's order of production.  Although the movants argue otherwise, I consider the actions of plaintiff and plaintiff's counsel prior to the entry of the order as largely irrelevant, with certain exceptions discussed later.  The evidence filed in respect to these matters, voluminous as it is, is not as clear as either side would argue.

From the affidavit of Andre R. Barry, one of plaintiff's counsel, I infer that he was the attorney assigned to the task of managing at least this portion of the discovery in this case.[1]  Filing 301, Attachment 1.  He gained an "understanding" from discussing the matter with Dr. Donald Weeks, the microbiologist conducting the applicable research, and from Dr. Patricia Herman, his former lab manager, prior to responding to BASF's motion to compel production, that all documents related to the research at issue were left in Dr. Weeks' lab, with the exception of a lab notebook, "manuscripts" Dr. Herman had worked on, and copies of some other documents, the originals of which remained in Dr. Weeks' lab.  Id. Paragraphs 6, 7.  After the court issued the order of January 26, 2006, Barry "informed the University" of the order and "coordinated with Dr. Weeks to produce all documents

---

[1] The Board is represented by Mr. Barry and two senior attorneys in the same firm.  Only Mr. Barry filed an affidavit in this matter, so it is not known what involvement, if any, the other two attorneys have personally had in respect to the subjects of this memorandum and order.  Because, however, the firm represents the Board, his actions are considered those of the firm.

that were required to be produced pursuant to that [o]rder." Id. at Para. 9.  Plaintiff produced documents on February 14, 2006, and Barry "believed at that time" that all required documents had been produced.  Id. at Para. 11.

In December, 2006 BASF's counsel, Charanjit Brahma, inquired of Barry whether all responsive documents had, in fact been produced.  Id., Exhibit B.  Thus began a further search for additional documents required by the order to be produced. First, a "binder" in Dr. Herman's possession was produced by Dr. Weeks; it "contained DNA sequencing information related to the dicamba resistance project."  Id. at Para. 13.  The documents in the binder were produced February 14, 2007.  Id. at Para. 16, and Exhibit D.

In March, 2007 counsel for both BASF and Syngenta continued to request additional documents.  In response to those requests, the University produced two lab notebook pages that had been inadvertently omitted from its prior production and also obtained two additional lab notebooks that had been prepared by two former researchers from Dr. Weeks' lab and taken with them when they left the University and the state of Nebraska.  Id. at Para. 20.

Movants' counsel continued to request additional documents for subjects that pertained to time periods after the expiration of the contract period (and thus not covered by the court's order), and, eventually, plaintiff's counsel agreed to produce some of them.  Id. at Para. 21-23, Exhibits H-M.  Several hundred documents were produced by plaintiff on or before August 10, 2007; of those, "29 pages . . . appear to be notes of conversations that took place during the term of the [c]ontract." Id. at Para. 28.

5

Meanwhile, movants noticed Dr. Herman's deposition for August 28 and 29, 2007.  In preparing for that deposition, Barry met with Dr. Herman over several days, including Sunday, August 26, 2007.  "Prior to that meeting, I believed that all University documents that were required to be produced pursuant to the Court's Order dated January 26, 2006, had been produced.  I also believed that all documents in Dr. Herman's possession responsive to BASF and Syngenta's discovery requests, other than documents subject to the University's objections, had been produced."  Id. at Para. 31.  However, at that meeting Dr. Herman produced to Barry 1,460 pages of additional documents "relating to the dicamba resistance project."  These were produced to movants' counsel August 27, 2006.  After her deposition the Board produced additional documents on August 31, 2007--judging from the BATES numbers, nearly 6,000 pages.  Id. at Para. 32.

At that time Mr. Barry sought additional documents from Dr. Weeks, as well.  These are described in his affidavit as "relate[d] to the University's research on dicamba resistant crops and that pre-date[d] the University's transformation of tobacco plants."  Id. at Para. 34.  This description is broader than the "development" documents within the contract period.  Dr. Weeks produced approximately 800 additional pages of documents on September 6, 2007, four days before his scheduled deposition.  Some of the documents were on floppy disks or otherwise recorded electronically and required a computer forensics expert to retrieve.  Although the Board's counsel offered to postpone the deposition until counsel for defendants had reviewed the documents, they chose to go forward with it as scheduled, and did so.  Id. at Para. 34-39.

After the Weeks deposition the University has produced thousands of pages of additional documents, some of them apparently duplicates.  Id. at Para. 43-47.  Barry's affidavit further states that Dr. Weeks and Dr. Herman have "informed my law firm that they have searched for and provided all documents in their possession related to the dicamba resistance project that were created from March 1, 1993 through March 1, 1997 . . . ."  Id. at Para. 48.

Dr. Weeks stated in his deposition that at the time of initial document production in this case he was not specifically directed by Mr. Barry to search for electronically stored documents; he was asked to produce "all documents" related to his research, and he produced hard copy documents without examining his electronic files.  Deposition of Donald Weeks, Filing 320, Exhibit 34, 179:14 - 183:6.  In addition, he stated that during 2005 the University changed the storage system for the archiving of electronically produced information, from a University-wide archiving system to a more localized, "individual computer" storage system.  Id. 189:7-10.  As part of that process Dr. Weeks reviewed his computer-stored information and preserved what he deemed was important.  Id. at 189:18-22.[2]  In that process neither the University nor counsel directed that electronically

---

[2] Conversely, of course, without guidance, he deleted what he viewed as unimportant.  BASF characterized it as follows:
  "Dr. Weeks . . . did not convey this change in storage policy to counsel for the Board.  Further, Dr. Weeks did not consider what might be important to this litigation when determining whether to preserve electronic documents, and did not consult with counsel as to what to keep and what to dispose of.  Instead, Dr. Weeks simply deleted whatever files and e-mails he wanted to or felt like deleting--at a point in time **after** this dispute existed and litigation was pending."  Reply Brief, filing 319, at 16 (emphasis in original).

stored information pertaining to the dicamba project be preserved in any form.  The University's computer system was such that some emails would be automatically deleted "at some point" if not preserved.  Id. at 190: 16-25.

> The removal of documents can take place
> before the materials' [sic] archived or after
> it's archived, and I don't recall at which
> point I did picking and choosing to eliminate
> files.  I – I was encouraged to eliminate as
> many files as I could – as you can imagine.

Id. at 191:21 - 192:2.[3]

   My overall conclusions from the evidence are as follows:  Significantly, although protesting that its noncompliance was not "willful," the Board has not denied that it failed to comply with the order, and its failure is established.  The extent of the failure, however, has not been established; that is, despite there having been produced thousands of pages of documents in the recent past, there is no specific evidence of how many of those documents or pages were actually covered by the order.[4]  Nor has

---

   [3] From this statement, counsel for BASF argues:
> "Despite their clear responsiveness, the Board
> apparently took no steps to . . . preserve electronic
> documents.  To the contrary, the Board actually
> encouraged its main witness, Dr. Weeks, to delete
> documents in the midst of this lawsuit."

Reply Brief, filing ___, at 15.  The argument insinuates that the Board had some sinister plot to direct Weeks to purposely find and destroy documents relevant to this dispute; there is no such evidence.

   [4] Note that the motion--and this memorandum and order--address only the allegations that the Board has violated the court's *order* of production.  The arguments of movants' counsel go considerably beyond that limited focus to claim that the Board has failed to provide other relevant evidence.  I make no findings with respect to such claims, as there has been no order

the Board shown that counsel took sufficient and required action either to ensure preservation of documents and records relevant to this dispute at its inception or to ensure full compliance with the court's order of production.  The evidence before me does not establish a "willful" violation of the order, despite the accusatory, elevated language utilized by BASF in its motion and briefs.  The evidence does establish, though, that plaintiff's counsel were far from diligent in complying with the court's order directing the production of the subject documents.

A finding of "willfulness" or "bad faith" in the context of failure to produce documents ordered by the court to be produced is not necessary for imposition of sanctions.  <u>Stevenson v. Union Pac. R.R. Co.</u>, 354 F.3d 739, 750 (8th Cir. 2004)(Sanctioning the ongoing destruction of material records during litigation and discovery by issuing an adverse inference instruction did not require finding of bad faith and was not an abuse of discretion).

When the prospect of litigation is present, parties are required to preserve documents that may be relevant to the issues to be raised, and their failure to do so may result in a finding of spoliation of evidence.  The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation.  <u>See Stevenson v. Union Pac. R.R. Co.</u>, 354 F.3d 739, 746 (8th Cir. 2004); <u>Dillon v. Nissan Motor Co., Ltd.</u>, 986 F.2d 263 (8th Cir. 1993) (Sanctions not abuse of discretion in pre-litigation destruction of evidence without showing of bad faith); see <u>also</u> <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine

---

compelling production of such evidence, a prerequisite for imposing sanctions under Rule 37(b).

9

document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Id. at 218) (citing Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Kronish v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). At a minimum, that means counsel must direct the client to ensure that documents are preserved, not deleted from an electronically stored information system or otherwise destroyed or made unavailable. Failure to do so has been found to be "grossly negligent." Zubulake, 220 F.R.D. at 221.

If, however, the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party for the court to impose sanctions. Stevenson, 354 F.3d at 750. When litigation is imminent or has already commenced, "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." See id. at 749 (quoting Lewy v. Remington Arms, 836 F.2d 1104, 1112 (8th Cir. 1988)). When faced with responding to a request for the production of documents, counsel are required to direct the conduct of a thorough search for responsive documents with due diligence and ensure all responsive documents under the "custody or control" of the client, unless protected from discovery, are produced. Fed. R. Civ. P. 34.

Of course, when ordered by a court to produce documents, counsel are under an even higher obligation to affirmatively direct complete compliance with the order in objective good faith. That standard was not met in this case. There is no evidence of any specific directives from counsel to the Board

10

regarding what was required to ensure that all documents covered by the order were produced.  The months-later production of covered documents reveals the inadequacy of simply "inform[ing] the University" of the existence of the order and "coordinat[ing]" the production of documents.  There is also no evidence of any assurances requested or given, sworn or otherwise, by University personnel to counsel to the effect that all covered documents had, in fact, been produced in accordance with the order.  There is also no evidence of any directives given by counsel at any time for a "litigation hold" to be placed on all possibly relevant documents and electronically stored information in any way connected to the dicamba resistance project to preserve them.

     The seriousness of counsel's failures to take affirmative actions to ensure the prompt production of all documents ordered to be produced cannot be overstated.  The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable. See, e.g., 1993, 2000, 2006 Amendments to Federal Rules of Civil Procedure, Advisory Committee Comments to Rules 26, 33, 34, 37, 28 U.S.C.  Compliance with these changes has placed---on counsel---the affirmative duties to work with clients to make required disclosures, Rule 26(a)(1)(2) and (3); reduce oppression and burden, Rule 26(b)(2); cooperatively plan discovery with opposing counsel, Rule 26(f); affirmatively certify accuracy and good faith in requesting and responding to discovery, Rule 26(g); and confer with opposing counsel to resolve disputes before filing certain motions, Rule 37(a)(2)(B), among others.  If counsel fail in this responsibility---willfully or not---these principles of

an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution.

    The results of the Board's failures are most troubling: first, a very serious delay in complying with the order, necessitating a delay in the preparation of the case for trial; second and more significantly, the loss of confidence that all relevant documents have even yet been produced, the Board's assurances to the contrary notwithstanding; third and most disturbing, the gnawing question of whether there were relevant documents or documents covered by the court's production order-- particularly electronically stored information--that have been deleted or destroyed.  Even absent evidence of the Board or its counsel taking action purposely designed to hide or destroy documents to undermine the legitimacy of these proceedings, these results do establish the need for requiring the Board to bear the consequences of its failures and for serious remedial actions.

    The sanctions requested are on the whole, reasonable in these circumstances, and I shall grant most of the requests in large part.  I reject, however, the request for an order precluding the Board from adducing evidence or arguing that there was insufficient or no evidence of communication between Sandoz and the University showing Sandoz's participation in the invention process.  In the absence of evidence of willfulness or bad faith, such a sanction would be tantamount to resolving the case on a discovery issue, and I am loathe to do so in the circumstances presented here.  The sanctions I impose, though expensive, are remedial in nature, aimed at resolving the compliance issue and restoring some confidence in the discovery process so this case can be resolved on all the evidence.

IT THEREFORE HEREBY IS ORDERED:

The motions for sanctions, filings 290 and 311, are granted in part, as follows:

1. Plaintiff shall search all of the files, including electronic files, of all of its current employees who participated in the dicamba resistance project and shall produce forthwith any and all documents found which are covered by the court's order; plaintiff shall also search all records in the University's document or data storage or archive system, including electronically stored information and files received from present and former employees who participated in the dicamba resistance project, and shall produce any and all documents found which are covered by the court's order. In the event that reading or obtaining access to electronically stored information, including previously deleted electronically stored information, requires the work of a computer forensic analyst to access such information on the University's or any employee's computers, plaintiff shall contract with such an analyst at its expense to ensure that all electronically stored information is searched for documents covered by the court's order.

2. The University's employee responsible for overseeing the above search shall certify under oath that plaintiff has complied with this order, stating in full the actions taken and by whom, and the number and nature of the documents covered by the order which have been found and produced. The certification shall be filed pursuant to the extant protective order.

3. Plaintiff shall immediately impose a litigation hold on all possibly relevant documents in its or its employees' possession or control and shall preserve all such documents, including exempting them from any document destruction or data deletion system or policy.

4. Each of plaintiff's named counsel shall file an affidavit setting forth all of the actions he has taken in respect to ensuring compliance with this order. Such affidavits may be filed under seal, that is, accessible by only the court, if they reveal privileged information or protected work product.

5. Plaintiff shall re-produce Drs. Weeks and Herman for deposition by counsel for BASF and Syngenta after the aforementioned search and production have been completed.  Such re-depositions shall be limited to seven hours total deposition time per deponent, split between BASF and Syngenta.  All expenses of such re-depositions, including attorneys fees for one attorney each for BASF and Syngenta for the time period consumed by the depositions, necessary travel expenses for one attorney each for BASF and Syngenta, necessary travel expenses for the deponents, and court reporter fees, shall be borne by plaintiff.  Counsel shall confer to schedule such depositions as expeditiously and least expensively as practicable.

6. Plaintiff shall pay BASF's and Syngenta's reasonable expenses, including attorneys' fees incurred in the filing of these motions.

7. Except as otherwise agreed by counsel, all deadlines in the current progression schedule of the case are suspended until further order.  Scheduling matters will be addressed following the resolution of remaining discovery motions.  Counsel shall confer in respect to scheduling and, on or before December 3, 2007, propose to the court their scheduling suggestions.

The motions are denied in all other respects.

DATED November 5, 2007.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge