THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, | ) ) ) | 4:04CV3356 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM** |
| BASF CORPORATION, | ) ) | **AND ORDER** |
| Defendant, | ) ) ) | |
| and | ) ) | |
| MONSANTO COMPANY, | ) ) | |
| Intervening Plaintiff, | ) ) | |
| and | ) ) | |
| SYNGENTA CROP PROTECTION, INC., | ) ) ) | |
| Intervening Defendant. | ) | |

Pending before the court is defendant BASF's motion for reconsideration or clarification (filing 354) of the court's prior order (filing 343) granting partial summary judgment in favor of the Board of Regents and Monsanto.  As has been customary in this case, BASF's motion has generated the filing of numerous briefs, exhibits, and motions by the parties.  (Filings 355, 356, 367, 368, 369, 370, 373, 374, 375, 376, 377.)

"Motions for reconsideration are disfavored.  The court will ordinarily deny such motions in the absence of (1) a showing of manifest error in the prior ruling; or (2) a showing of new facts or legal authority, neither of which could have been

brought to the court's attention earlier with reasonable diligence."  NECivR 60.1(c).
For the reasons that follow, BASF's motion for reconsideration shall be denied for
failure to make the required showing of "manifest error" or "new facts" that could not
have been presented earlier.

In language that at times borders on the intemperate, BASF argues that: (1) the
court made a "legally impossible" decision by granting summary judgment in favor
of Monsanto based on its "bona fide purchaser" argument; (2) the court failed to
address unpatented know-how and trade secrets; and (3) evidence "discovered" after
the motions for summary judgment were fully briefed indicates that the Board of
Regents, by its conduct, ratified Sandoz Agro's assignment of its non-exclusive
license to BASF, thereby estopping the Board of Regents from arguing that the non-
exclusive license is not assignable.  (Filing 354.)

### Bona Fide Purchaser

First, as should be evident from the absence of discussion in the court's
memorandum and order regarding Monsanto's "bona fide purchaser" theory, the court
did not consider, address, or rule on this issue, as it was unnecessary to disposition
of the motions.  Instead, the court considered Monsanto's alternative argument [1] and
ruled that Monsanto obtained its exclusive license from the valid legal title holder at
the time, the University.  The court also found that Monsanto's exclusive license is
valid, subject to a potential pre-existing non-exclusive license running in favor of
Syngenta if Syngenta can prove its status as Sandoz Agro's "affiliate" under the 1993
Contract.  (Filing 343, at 32.)   Accordingly, the court granted the portion of
Monsanto's summary judgment motion directed to the validity of its exclusive license

---

[1]*See* Filing 225, Monsanto's Br. Supp. Mot. Summ. J. at 26-28 (making
argument that Monsanto took its license from the valid legal title-holder at the time,
the University).

despite BASF's and Syngenta's competing ownership claims.[2]

### *Unpatented Know-How, Inventions, Trade Secrets*

Second, while BASF claims that this case encompasses a broad category of know-how, inventions, and patents, the court's ruling on the motions for summary judgment was expressly limited to the '896 and '724 patents, as that was the focus of the parties' briefing.  (Filing 343, at 23 n.14 ("The only specific know-how, invention, or patent identified in this lawsuit are the '896 and '724 patents which, on their face, were invented solely by University personnel and are assigned to the Board of Regents of the University of Nebraska.").)   BASF cannot now, on a motion for reconsideration, submit evidence or make arguments regarding license rights to

---

[2]BASF's confusion on the "bona fide purchaser" issue was apparently caused by the court's method of parsing and separately ruling on each aspect of the parties' claims in an effort to bring clarity to the court's self-described "mind-numbing" memorandum and order which was based on an unwieldy summary-judgment record. (Filing 343.)  On pages 20-22 of the court's prior memorandum, the court laid out the parties' claims on summary judgment—largely verbatim from the parties' motions and briefs—with citations to those motions and briefs.   One of Monsanto's claims—in Monsanto's own language—was as follows: "Monsanto's 2005 exclusive patent license from the University cannot be voided by BASF and Syngenta's later-asserted ownership claims because Monsanto's exclusive license was acquired for valuable consideration with no notice of those claims."   (Filing 225, Br. Supp. Monsanto's Mot. Summ. J. at 1.)  When the court later restated these claims in the "**CONCLUSION**" portion of its memorandum, the court inserted its ruling on each part of the parties' claims by simply indicating "**GRANTED**" or "**DENIED**" as to each claim, as characterized by the parties.  The court did not find it necessary or helpful to repeat in its conclusion the basis on which each ruling was made. Accordingly, and apparently confusingly, the court's ruling regarding Monsanto's claim, quoted above, read as follows: "Monsanto's 2005 exclusive patent license from the University cannot be voided by BASF (**GRANTED**) and Syngenta's (**DENIED**) later-asserted ownership claims because Monsanto's exclusive license was acquired for valuable consideration with no notice of those claims." (Filing 343, at 34.)

"know-how," inventions, trade secrets, or patents not encompassed by the court's prior order on summary judgment.

> Motions for reconsideration serve a limited function:  to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The nonmovant has an affirmative duty to come forward to meet a properly supported motion for summary judgment . . . .  Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation and quotation omitted).

### *"New" Evidence*

Third, and finally, BASF claims that "newly discovered evidence" raises genuine issues of material fact regarding whether the Board of Regents ratified the assignment of a non-exclusive license to BASF:

> In a deposition that occurred almost four months after the parties filed their motions for summary judgment, one of the Board's primary witnesses, Dr. Weeks, testified that the Board continued to comply with its obligations under the Sandoz Agro Agreement even after the 1996 assignment to BASF.  This conduct recognizing the validity of the assignment of Sandoz Agro's rights ratified the license assignment to BASF as a matter of law. . . . Dr. Weeks testified in his deposition (which occurred well after the summary judgment briefing concluded) that the Board ***met with BASF twice in early 1997 to discuss the patent applications*** . . . .  [T]his shows that the Board itself did not believe that the assignment to BASF was invalid at that time.

(Filing 355, BASF's Br. Supp. Mot. Recons. or Clarif. at CM/ECF pp. 20-22

4

(emphasis in original).)

The deposition testimony upon which BASF relies to support its ratification argument was taken on September 10, 2007—almost two months *before* the court's order on summary judgment was filed on November 6, 2007. BASF did not seek to supplement the summary judgment record during those two months, nor did it otherwise attempt to bring this evidence to the court's attention before it issued its ruling on the summary judgment motions.

In any event, similar "ratification" evidence had been produced prior to the summary judgment motions—evidence with which BASF did nothing. *See* Filing 368-6, Board of Regents Index of Evidence, Ex. 5, at CM/ECF p. 4 (copy of notes taken by BASF employee Steve Bowe during conversation with Dr. Weeks dated February 24, 1997, stating under heading "Patent Status" that Dr. Weeks had made a disclosure and noting that "[a]ctual patent will contain gene sequence"); Filing 368-7, Board of Regents Index of Evidence, Ex. 6, at CM/ECF p. 17 (Board of Regent's Answer to Syngenta's Interrogatory No. 17 dated December 22, 2006, stating that University's Vice Chancellor for Research, Donald Helmuth, told BASF about the provisional patent application and Dr. Weeks informed BASF about the invention disclosure he filed within the University); Filing 370-10, Monsanto's Index of Evidence, Ex. I, at CM/ECF pp. 17-20 (deposition testimony by BASF's 30(b)(6) witness, Dr. Mascianica, verifying notes from February 24, 1997, conversation between Dr. Weeks and BASF employee Steve Bowe regarding "whether or not they had enough art to consider to move some type of proposal forward," specifically, "a patent application").

Therefore, BASF has failed to make "a showing of new facts . . . which could have been brought to the court's attention earlier with reasonable diligence." NECivR 60.1(c).

IT IS ORDERED:

1.     The Motion for Reconsideration or Clarification (filing 354) filed by defendant BASF Corporation is denied;

2.     The Motion to Strike (filing 374) portions of BASF's reply brief in support of its Motion for Reconsideration or Clarification is denied as moot, as the latter motion has been denied.

April 3, 2008.                    BY THE COURT:
                                  s/ *Richard G. Kopf*
                                  United States District Judge